OPINION OF THE COURT
Norman C. Ryp, J.
issue: Whether the New York City Police Commissioner is subject to a CPLR article 78 order of mandamus directing return of “seized property” (and ancillary relief) taken incidental to misdemeanor arrest, later transferred under subpoena to United States Attorney (SONY; nonparty herein) prior to later apparent dismissal of the arrest-triggering charge(s)?
A. PROCEDURAL HISTORY
Petitioner, Julio Rosado, moves for an order of mandamus, under CPLR article 78, directing respondent, Commissioner, New York City Police Department (NYPD) to: return various items of personalty (i.e., brown attaché case, keys, appointment, telephone and address books, friends and associates’ list, birth certificate and miscellaneous papers [“seized property”] seized from petitioner, on June 16, 1981, for “safekeeping” at his arrest for a violation of *653 Penal Law, § 145.00 [criminal mischief, fourth degree — class A misdemeanor — which petitioner’s attorney’s April 1, 1982 letter claims was later dismissed]); provide petitioner with any and all copies, photographs or other reproductions made thereof; provide petitioner with a complete list of any and all individuals, Federal, State or local governmental agencies or departments afforded an opportunity to examine the property seized and all resulting actions taken including electronic, physical or mail surveillance thereunder from information obtained thereof; immediately cease any resulting action taken by and expunge all records of respondent’s department from information obtained from petitioner’s seized property.
Respondent cross-moves, under CPLR 7804 (subd [f]) and 3211 (subd [a], par 7), to dismiss for failure to state a cause of action, as a matter of law. Such cross motion is based upon the grounds that the subject attaché case, originally seized as allegedly having been or would be used in committing, aiding or in furtherance of a crime, was duly surrendered by respondent’s NYPD-72nd Precinct to the Federal Task Force on Terrorism (Task Force) pursuant to subpoena, dated June 22,1981 issued by the Clerk, United States District Court, Southern District of New York, at the request of the United States Attorney for the Southern District of New York (USA-SDNY).
B. FACTS
The relevant facts appear to be uncontroverted. On June 16, 1981, petitioner was arrestéd with two others by New York City police officers and charged with violating section 145.00 of the Penal Law (criminal mischief, fourth degree, class A misdemeanor) by spray painting a wall, without the permission or authority of the owner. Petitioner pleaded not guilty and (at submission of subject motion) subject criminal complaint was presently pending in Criminal Court, Kings County. Subsequently, according to petitioner’s attorney the above criminal charge was dismissed as against petitioner (although no certificate of disposition and the reasons thereof is annexed).
Petitioner’s seized property was taken from him at the time of his above arrest and after booking, respondent’s 72nd Precinct gave petitioner a property receipt. Petitioner *654 was released in his own recognizance on June 17, 1981 whereupon petitioner attempted to regain possession of his seized property at NYPD’s 72nd Precinct. Upon displaying his receipt, petitioner was then given a note signed by a Lieutenant Mackey, NYPD’s 72nd Precinct, dated June 17, 1981 which reads “Anyone seeking property on voucher #5895308 (F.A.L.N. Arrest). Refer them to Det. Monigan, Federal Task Force on Terrorism, 28 Floor, 26 Federal Plaza, N.Y.C.” Petitioner, with counsel, tried twice to regain possession of his seized property from the Task Force at 26 Federal Plaza between June 17 and July 9, 1981, but was informed it would not be returned to him.
On June 22, 1981, as noted above, John S. Martin, Jr., USA-SDNY issued a subpoena (duces tecum) for the seized property with regard to alleged violations of sections 371 (conspiracy), 844 (possession, receipt and transportation of explosives) and 1962 of title 18 of the United States Code (principal of prohibited activities, i.e., racketeering or collection of an unlawful debt) and pursuant thereto respondent turned over the items to the Task Force.
c. parties’ contention
In support of the subject motion for a mandamus order and in opposition to respondent’s cross motion, petitioner submits that: he was arrested under section 145.00 of the Penal Law for criminal mischief, fourth degree (spray painting), with none of the seized property having any relevance thereunder; the seized property was not held as “evidence” of a crime but for “safekeeping”; respondent unlawfully refused return of seized property, upon petitioner’s demand, while in respondent’s custody prior to the USA-SDNY’s subpoena under an alleged FALN investigation; seized property is not contraband or weapons; section 435-4.0 of the Administrative Code of the City of New York is inapplicable because it constitutes an unconstitutional (United States and New York State) and illegal seizure. Thus, respondent’s cross motion should be denied and the petition granted in its entirety.
In opposition to the petition and in support of the cross motion, cross movant claims an assistant USA-SDNY (one Robert N. Schwartz, Esq.), advised respondent’s affirmant’s, of counsel, that the subject attaché case contains *655 unspecified material relevant to a Federal Grand Jury investigation under subdivision b of section 435-4.0 of the Administrative Code, into the criminal activities of the FALN for alleged violation of sections 371, 844,1962 et seq. of title 18 of the United States Code. Such investigation, contends cross movant, until terminated, bars petitioner’s action, as a matter of law, since respondent’s NYPD 72nd Precinct, once seized property is vouchered, is equivalent to the NYPD Property Clerk, under subdivision g of section 435-4.0 of the Administrative Code.
D. APPLICABLE STATUTES
1. The Fourth Amendment to the United States Constitution and section 12 of article I of the New York State Constitution each state: “The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated”.
2. Subdivisions b and'g of section 435-4.0 of the Administrative Code (Property Clerk [NYPD]), provide, inter alia:
“b. Custody of property and money. — All * * * property or money suspected of having been used as a means of committing crime or employed in aid or furtherance of crime * * * shall be given, as soon as practicable, into the custody of and kept by the property clerk” (Local Laws, 1978, No. 46 of City of New York, Dec. 29, eff March 29, 1979).
“g. No action for property or money held as evidence. — No action or proceeding may be brought against the property clerk for or an account of any property or money held as evidence in any criminal investigation or proceeding until the termination thereof.” (Local Laws, 1943, No. 47 of City of New York, eff Dec. 30, 1943.)
E. APPLICABLE LAW
The exclusionary rule, later codified in CPL 710.20 (subd [a], par 1) and rules 12 and 41 of the Federal Rules of Criminal Procedure (in US Code, tit 18, Appendix), was first judicially created by motion to suppress to effectuate the above.-cited Federal and State constitutional guarantees against unreasonable search and seizures, unless, generally conducted pursuant to a valid search warrant or *656 incident to a lawful arrest, upon probable cause. (People v Loria, 10 NY2d 368, 373; Ybarra v Illinois, 444 US 85; Torres v Puerto Rico, 442 US 465; People v Wharton, 46 NY2d 924; People v Moore, 47 NY2d 911 [revd on dissenting opn at 62 AD2d 155, 157.)
Its principal raison d’etre is to deter unlawful government conduct in obtaining evidence for use in Federal and State (through the Fourteenth Amendment’s due process clause) criminal prosecutions. (Weeks v United States, 232 US 383; Mapp v Ohio, 367 US 643, 655; Brown v Texas, 443 US 47.) However, certain courts have refused to extend the exclusionary rule, upon Fourth Amendment challenges to a Grand Jury witness’ questions and subpoenas. (See United States v Calandra, 414 US 338; United States v Dionisio, 410 US 1; United States v Mara, 410 US 19.) The court must also consider the applicability of the “fruit of the poisonous tree” doctrine. (See Dunaway v New York, 442 US 200; Brown v Illinois, 422 US 590.)
The above provisions of subdivisions b and g of section 435-4.0 of the Administrative Code are cited by respondent as legal justification for respondent’s NYPD-72nd Precinct taking possession and transfer of the seized property to the Task Force.
Initially, this court notes that the United States Court of Appeals for the Second Circuit held section 435-4.0 of the Administrative Code unconstitutional, in violation of the due process clauses of the United States Constitution’s Fifth and Fourteenth amendments, as applied to persons from whose possession money or property, other than contraband, has been taken or obtained though such money or property was not related to any criminal proceeding or, if so related, such criminal proceedings had been terminated or if the money or property had been needed as evidence, it was no longer needed for that purpose. (McClendon v Rosetti, 460 F2d 111, 116.) Moreover, even if the seized property was contraband or the instrumentality of a crime the burden of proof, by a fair preponderance of the credible evidence, rests upon respondent. (Clay v McCabe, 56 AD2d 747; Matter of New York City v Cosme, 67 AD2d 852.)
Moreover, it appears that a CPLR article 78 proceeding in the nature of mandamus is an appropriate vehicle to *657 compel return of property seized by police, and, at least in the Second Department, subject to compliance with the service and filing of a notice of claim with a municipality (General Municipal Law, § 50-e) or county (County Law, § 52). (See Boyle v Kelley, 42 NY2d 88; Matter of Oakley v Police Prop. Clerk of Nassau County, 75 AD2d 816; Matter of Melmarkets v Dillon, 77 AD2d 897.) However, in view of respondent’s denial of current possession, custody or legal responsibility for the seized property, such contention, if advanced by respondent, appears moot in view of its futility and in the interest of judicial economy. (Riley v Ambach, 508 F Supp 1222; Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52.) If the initial seizure was illegal, a court, with equitable jurisdiction can order the return of such illegally seized property after a hearing, under CPL 710.70. (People v Hylton, 55 AD2d 684; People v Braunhut, 101 Misc 2d 975; cf. People v Salzone, 98 Misc 2d 131.)
An analysis and application of the foregoing statutory and caselaw authority to subject facts (even assuming respondent’s NYPD’s 72nd Precinct’s vouchering was the anticipatory arm of its property clerk), does not reasonably support the applicability of the terms of subdivisions b and g of section 435-4.0 of the Administrative Code (respondent’s seizure justification), assuming its constitutionality (see McClendon v Rosetti, 460 F2d 111, supra). It appears that respondent has not pleaded, much less proven, that the seized property “for safekeeping” incidental to an arrest under section 145.00 of the Penal Law (criminal mischief, fourth degree) was “suspected of having been used as a means of committing crime or employed in aid or furtherance of crime” (Administrative Code, § 435-4.0, subd b). The seized property (attaché case, keys, appointment, telephone and address book, list of friends and associates, miscellaneous personal papers, including a birth certificate) does not reasonably appear, based upon the submissions herein to be “contraband” or instrumentalities to commit a crime(s), including the only known charge under section 145.00 of the Penal Law (since purportedly dismissed) involving the spraying of a wall.
It further appears that respondent while alleging, has not proven, that any of the seized property, initially held *658 by respondents NYPD-72nd Precinct for “safekeeping” was held as evidence in any pending criminal investigation or proceeding. There is no submitted proof that the seized property transferred, on or about June 22, 1981, to the Task Force, under the USA-SDNY-subpoena was evidence of violation(s) of sections 371, 844,1962 et seq. of title 18 of the United States Code or any pending criminal investigation or proceeding. The fact, nature, quality and current status, if any, or legal authority and limits of the “grand inquest” referred to in said USA-SDNY subpoena, dated June 22, 1981, is unspecified in the motion papers. (See Matter of B. T. Prods. v Barr, 44 NY2d 226.)
In this special proceeding the court, under CPLR 409 (subd [b]), is empowered to make a summary determination “upon the pleadings”, papers and admissions to the extent, where no triable issues of fact are raised. (See City of New York v Cosme, 67 AD2d 852, supra.)
However, a thorough review of the submitted motion and cross motion papers raises a number of unanswered material factual questions such as:
1. What did the NYPD voucher mean by “safekeeping” and for or from what or whom?
2. Precisely when and by whom the seized property was turned over by NYPD’s-72nd Precinct to the Task Force? On June 17, 1981, the date of NYPD-72nd Precinct Lieutenant Mackey’s note or on or after June 22,1981, the date of the USA-SDNY subpoena?
3. Whether part or all of the seized property, was turned over by NYPD’s 72nd Precinct to the Task Force. If part, which and where is the remainder of the seized property? If all, whether such (any personalty outside of the attaché case) was specified by the USA-SDNY subpoena?
4. What is the authority, legal and constitutional and current status, continuing, dormant or terminated, of the Federal “grand inquest” (violations of US Code, tit 18, §§ 371, 844, 1962 et seq.), the raison d’etre for the USASDNY subpoena?
(a) Precisely how is the seized property material and relevant thereto?
*659 (b) Where and in whose custody and possession is the seized property at the present time?
The afore-mentioned factual issues inevitably raise this threshold legal issue: If the seized property is under the custody and possession of the USA-SDNY, what jurisdiction, if any, does this court have to grant any or all of the relief requested? The court notes neither side has submitted any memorandum of law herein.
5. When, where, before which court and Judge or Justice and upon what grounds, with or without prejudice, were the Criminal Court, Kings County, charge(s) under section 145.00 of the Penal Law against petitioner dismissed?
(a) Whether or not sucho arrest, and subject incidental search thereunder, was lawful were disposed of by or before such dismissal?
F. CONCLUSIONS
Accordingly, by reason of the foregoing, petitioner’s motion, under CPLR 409 (subd [b]), for summary determination of an order of mandamus, is denied, without prejudice to renew, after joinder of issue, conduct and completion of any CPLR article 31 pretrial discovery procedures (see Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400) and trial forthwith. Respondent’s CPLR 7804 (subd [f]) (denominated CPLR 3211, subd [a], par 7) motion to dismiss, as a matter of law, is denied and respondent is given leave to serve and file its answer within 10 court days after service of a true copy of the order to be settled herein. Petitioner may renotice the matter for hearing or trial forthwith under CPLR 7804 (subds [f], [h]) upon five court days. The foregoing is without prejudice to the parties’ rights and remedies, if any, under the Criminal Procedure Law, in the Criminal Court, Kings County, or otherwise, and in the United States Court for the Southern District of New York (origin of the USA-SDNY subpoena).